OPINION OF THE COURT
Martin Schoenfeld, J.
“Will you walk a little faster? said a whiting to a snail. There’s a porpoise close behind us and he’s treading on my tail. See how eagerly the lobsters and the turtles all advance! They are waiting on the shingle — will you come and join the dance?” (Lewis Carroll, Alice’s Adventures in Wonderland.)
Respondents, the Tax Commission of the City of New York and the Commissioner of Finance of the City of New York (hereinafter referred to as the City) move to dismiss the petitions of petitioner Moonglo, Inc., alleging that the proceedings are barred by laches. Moonglo opposes the City’s application, and moves pursuant to Uniform Rules for Trial Courts (22 NYCRR) § 202.60 (h) to preclude the City from offering expert testimony at trial, for failing to exchange its appraisal report. For the reasons set forth herein, this court is denying both motions.
Background
The property involved in these proceedings is a nine-story apartment building located at 111 East 80th Street, identified as block 1509, lot 6. Moonglo commenced Real Property Tax *608 Law article 7 proceedings challenging the real property tax assessments for this property for the tax years 1990/1991 through 1994/1995. According to the City, Moonglo has abandoned its right to proceed because it basically failed to pursue these claims for almost a decade, until the matter appeared on my calendar for a conference on October 27, 2004. The chronology of events, as stated by the City, is essentially as follows:
On April 14, 1994 Moonglo filed with the City a complete certified statement of income and expenses (certification) for the tax years 1990/1991 through 1994/1995. Moonglo then filed a request for judicial intervention (RJI) for tax years 1990/1991 through 1993/1994 on April 20, 1994. On May 5, 1995, the City requested information as part of a field audit of the property. Moonglo filed an RJI for tax years 1994/1995 on June 8, 1995. The requisite information in response to the City’s field audit was supplied on July 7, 1995.
On August 30, 2004, perhaps in response to a court notice to appear for an October preliminary conference, there was further activity by both sides. Moonglo, in reply to a city request, sent copies of its Tax Commission applications for correction of assessed value for the additional tax years 2001/2002 through 2004/2005. The City also requested, by letter, that Moonglo’s demands for reductions “for all open years” be given. The City and Moonglo were to conduct their own settlement conference on November 18, 2004. However, the City alleges that it subsequently informed Moonglo that based upon a “review and analysis,” there was no overassessment of the property. On April 19, 2005, at a further court conference, Moonglo stated its intent to pursue the matter to trial. Accordingly, upon the court’s direction, notes of issue for all open petitions were filed on June 9, 2005 (a note of issue for tax year 1990/1991 had been previously filed). At a June 21, 2005 pretrial conference, Moonglo requested that the court mark the proceeding for the 1995/ 1996 tax year off calendar, which was thereafter discontinued, and stated that it was not currently pursuing the proceeding for tax years 1996/1997 through 2004/2005. Regarding the remaining open years, the date of September 12, 2005 was given by the court for the exchange of appraisal reports, with October 17, 2005 being given as the date for a consolidated trial.
Contentions
The City alleges that there was little or no activity in this matter for almost a decade, that the property may have changed *609 substantially over time, and that it would have great difficulty in gathering information necessary to determine the property’s value. According to the City, when a petitioner “requests] that proceedings go forward, [its] Law Department handles the claims in a timely manner.” Further, that “[t]here is nothing in [the City’s] or the Law Department’s conduct that justifies or may be deemed to have caused [Moonglo] to delay for so many years in prosecuting these proceedings.” Thus, the City contends that if the matter is tried, it will suffer extreme prejudice because the claims are stale and difficult to verify.
In opposition, Moonglo points to the City’s admissions that a timely certification, pursuant to 22 NYCRR 202.60 (c) was served, and that additional information was supplied on July 7, 1995 in response to the City’s audit request. According to Moonglo, what the City fails to mention is that thereafter, on October 31, 1995, a letter was sent asking the City to schedule a settlement conference. Moonglo never received a reply. Further, that on August 3, 2000, a letter was written by Moonglo requesting that, in light of personnel turnover at the City, this matter together with other cases be reassigned and scheduled for conference. Again, the City failed to reply. As for the November 2004 settlement conference, Moonglo states that it was adjourned because, as a result of the assessor bribery scandal, the City would not discuss any matter prior to submission of answers to certain interrogatories. On December 8, 2004, Moonglo delivered its answers to these interrogatories. However, it then received a letter from the City stating, with “no explanation given,” that there would be no offer of assessment reduction. Subsequently, on January 20, 2005, Moonglo was advised, that as a matter of policy, the City would not be making offers to anyone for tax years more than 10 years old.
Finally, Moonglo reminds this court that after the tragic events of September 11, 2001 the entire city Law Department’s operations ceased for a period of time since it could not occupy its downtown office. Even after returning to its office, files had to be recreated and other immediate problems resolved. Not unreasonably, the City was given great latitude in deferring the processing of its cases. As a result, however, many pending tax certiorari matters remained in limbo for almost a year and a half.
Discussion
The City contends that its motion to dismiss is made pursuant to the equitable doctrine of laches and not pursuant to *610 RPTL 718 or CPLR 3216. According to RPTL 718, unless a note of issue is filed within four years from the last date provided by law for commencement of a proceeding the matter is deemed abandoned. However, in order to have time to reasonably review the voluminous tax assessment challenges that the City receives, and where appropriate, to amicably resolve such claims, it is customary practice that, pursuant to stipulation, for the sole purpose of satisfying RPTL 718, the filing of a certification with the City is deemed to be the equivalent of the filing of a note of issue. Concededly, that was done here.
Pursuant to CPLR 3216 (b), a pre-note of issue matter cannot be dismissed for want of prosecution unless a written demand to file a note of issue within 90 days has been served. Concededly, that was not done here. Further, CPLR 3216 (d) states that once a note of issue has been filed, any prior delay may not be considered on a motion to dismiss for want of prosecution. (See Fontenelle v Glens Falls Hosp., 105 AD2d 933, 934 [3d Dept 1984].) In this matter, pursuant to court direction, notes of issue were filed on June 9, 2005. Yet, the City’s motion to dismiss was not made until more than two months later.
In arguing that it is moving pursuant to the equitable doctrine of laches, the City cites Matter of Schulz v State of New York (81 NY2d 336 [1993]) and Matter of Barabash (31 NY2d 76 [1972]). Both cases are readily distinguishable from the present matter. Matter of Schulz involved a constitutional challenge to a statute permitting the issuance of certain bonds. As most of the bonds had already been sold prior to the commencement of the action, the case was dismissed on the ground of laches, the majority noting “the impossibility of putting genies back in their bottles.” (At 348.) Matter of Barabash is even less persuasive. There, in seeking to dismiss a claim for an accounting, defendant trustee invoked a laches defense. The Court, however, upon viewing the circumstances, rejected his defense, stating that “the essential element of laches, namely prejudice, is not spelled out by the mere lapse of time with all the ‘attendant circumstances’ thereto.” (At 82.)
Interestingly, both cases cited by the City involve allegations of laches prior to the commencement of actions, and not for lack of prosecution subsequent to commencement. The present matter is more of a calendar issue, Moonglo having timely commenced its proceedings. As to calendar practice, in Hodge v New York City Tr. Auth. (273 AD2d 42, 43 [1st Dept 2000]), it is noted as follows: “Any doubt that a court had no power whatso *611 ever to dismiss an action for ‘gross laches’ or ‘failure to prosecute,’ in the absence of a 90-day demand to file a note of issue, has been dispelled by the Court of Appeals . . . .’’In Airmont Homes v Town of Ramapo (69 NY2d 901 [1987]), the Court of Appeals denied respondent Town of Ramapo’s application to dismiss article 7 petitions on the ground of laches, stating that the failure to prosecute is a legislative creation, and that, pursuant to CPLR 3216, respondent had failed to afford petitioners adequate written notice.
In the present case, even if the City’s motion to dismiss under an equitable theory of laches could somehow procedurally survive, it would still be denied on the merits. Among the fundamental principles of equity is that equity will only aid those who have been vigilant and not those who sleep on their rights. Further, one who seeks equity must do equity with respect to the subject matter. (55 NY Jur 2d, Equity §§ 97-106.) In viewing the chronological series of events as set forth above, without the need to repeat them here, and in balancing both the activities of, and the inactions by each side, it cannot be said that justice favors the City’s equity theory.
Finally, Moonglo referred to the interrogatories relating to the assessor bribery scandal, which the City’s Law Department insists be answered before it will even consider discussing a matter. It is worth noting that for a long period of time, the City’s Tax Commission, likewise, summarily refused to review tax assessments of properties located in Manhattan, unless similar interrogatories were answered. This led to litigation on behalf of property owners, and ultimately to a decision that the Tax Commission had circumvented its duty and exceeded its authority. (Matter of 439 E. 88 Owners Corp. v Tax Commn. of City of N.Y., 307 AD2d 203 [1st Dept 2003].) While a Tax Commission review only involves the two most recent years, its determinations may often lead to a resolution of prior tax year proceedings as well.
Motion to Preclude
Pursuant to 22 NYCRR 202.60 (g) (1), upon filing of the note of issue and certificate of readiness, the court shall direct that appraisal reports be exchanged and filed by a date certain, which is to be a specified time prior to the date scheduled for trial. In accordance with 22 NYCRR 202.60 (h), at trial, expert witnesses are limited in their proof of appraised value to details set forth in their appraisal reports. A party who fails to timely *612 serve an appraisal report is precluded from offering expert testimony on value. However, the court may, “upon good cause shown,” relieve a party of a default in the service of a report or extend the time for exchanging such reports. (Id.)
Moonglo, in moving to preclude the City from offering expert testimony, reiterates that at the June 21, 2005 pretrial conference the date of September 12, 2005 was given for the appraisal exchange, with the trial set for October 17, 2005. Moonglo further reminds the court that in light of these dates, the City was advised that any motion practice must be done promptly. Nevertheless, the City’s dismissal motion was not made until August 24, 2005, and its reply papers were filed on September 7, 2005. Thereafter, on Friday, September 9, 2005, with the exchange of appraisals due that Monday, the City wrote a rather bold letter to the court, the last paragraph of which reads as follows:
“To be clear, the City stands ready, willing, and able to exchange the appraisal. Based on the above, however, we respectfully submit that such a course is inconsistent with seeking dismissal based on the delays in the prosecution of this case, and therefore, the City will not pursue the exchange of appraisals until such time as the motion is determined, or as further directed by this Court.” (Emphasis added.)
The City’s poor time management of its own laches motion is another example of how the City itself contributed to the delays in this matter. Further, the statement in the City’s letter of being ready, willing, and able to exchange appraisals is another indication that while it may have been more difficult for the City to value the property for the earlier years, it did not “suffer extreme prejudice” as alleged in its motion papers.
Moonglo filed its appraisal report on September 12, 2005. To date, the City has not filed its report. In deciding Moonglo’s motion to preclude, the court must therefore now determine whether there is “good cause” to permit a late filing. In this regard, it is the court’s opinion that the City’s laches motion, albeit late itself, was made in good faith. Further, that if successful, the motion would have obviated the need for an appraisal report. Also, since the City is prohibited from seeing Moonglo’s appraisal report in advance of submitting its own, there is no substantial prejudice to Moonglo. In RPTL article 7 proceedings, the good cause language has been liberally construed, since it is well established that where possible matters should be tried on the merits. As stated in the case of Mat *613 ter of G.T.I. Co. (Mid-Hudson) v Assessor & Assessment Bd. of Review of City of Kingston (88 Misc 2d 806, 809 [Sup Ct, Ulster County 1976]):
“If such relief were not permitted, great prejudice would result to respondents in that they would be unable to provide any evidence as to value at trial. Little prejudice results to petitioners by permitting respondents to file such report except to allow both parties their day in court. One must note that if respondents are precluded from filing its appraisal report, it is the city taxpayers who shall be adversely affected.”
While it has been held otherwise with respect to filing amended or supplemental reports, courts are generally reluctant to preclude initial appraisal reports. (Matter of Town of Guilderland [Pietrosanto], 244 AD2d 604, 605 [3d Dept 1997].) As further noted therein, while the excuses proffered were “far from compelling,” it was not an abuse of discretion to conclude that “good cause” was demonstrated, and that “the interests of justice are best served by affording both parties an opportunity to elicit expert testimony as to value.” (Id. at 606.) Although that case involved a condemnation matter, the “good cause” language in eminent domain proceedings is almost identical to that found in real estate tax certiorari proceedings. (Compare 22 NYCRR 202.61 [a] [3], with 22 NYCRR 202.60 [h].)
Comment
In New York City, due to the short statute of limitations, RPTL article 7 petitions are often filed even before the Tax Commission actually reviews or determines requests for correction of assessment. (See NY City Charter §§ 164-166.) Thus, every year this court is inundated with tax certiorari cases that may eventually become stagnant. In a sense, the City, by its refusal to review older cases, addresses this problem. It is now clear that petitioners must either discontinue their older cases or incur the additional expenses of preparing an appraisal report and of going to trial. Of course, the City, by maintaining such an inflexible policy, has created a two-edged sword. According to Moonglo, it attempted early on to resolve this matter along with other cases, “only to be met by the City’s studied indifference.” As a result of its policy, the City, with its limited resources, must now also incur appraisal costs and be ready for trial forthwith. (See RPTL 700 [3].)
*614 This court suggests in passing that there are more practical, expeditious, less adversarial and cheaper methods for resolving old cases, while at the same time keeping up with current tax year challenges. For example, approximately eight years ago, the City conducted hearings using what is known as Tri-Boards. A Tri-Board consists of personnel from the Tax Commission, the Comptroller’s Office, and the City’s Law Department. As previously noted, the Tax Commission’s review is limited to the two current years. (See Administrative Code of City of NY § 11-225, as amended by Local Law No. 88 [1996] of City of NY § 2.) However, by using Tri-Boards, all proceedings for any open years regarding a particular property can be discussed at the same time. While such hearings help resolve numerous cases, even where a matter remains unsettled, petitioner knows that the City’s agents have collectively made a good-faith effort in evaluating the tax assessment challenges for all years. This should have an impact upon petitioner’s counsel in deciding whether or not it is advisable to continue pursuing any pending court proceedings. Thus, the use of Tri-Boards, and similar methods, helps to accomplish the ultimate goal of resolving tax matters quickly and fairly. The objective, as noted in Press v County of Monroe (50 NY2d 695, 704 [1980]), is as follows:
“Inasmuch as any unit of municipal government is dependent for operating funds on the collection of taxes and assessments and in turn such collection depends on the apportionment of the lump-sum revenue required among the many taxpayers, all considerations of practicality and fairness dictate that the necessary allocation of tax burden be concluded speedily.”
Conclusion
Thus for the reasons set forth herein, the City’s motion for an order dismissing the petitions of Moonglo on the ground that the proceedings are barred by laches is, in all respects, denied. Moonglo’s motion for an order precluding the City from exchanging an appraisal report and offering any expert testimony on value at the trial of these proceedings is likewise, in all respects, denied.